UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:23cv21933

AT LAW AND IN ADMIRALTY

JANE DOE,

     Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.,
a/k/a ROYAL CARIBBEAN CRUISES LTD., A
LIBERIAN CORPORATION, d/b/a
ROYAL CARIBBEAN CRUISE LINE and
d/b/a ROYAL CARIBBEAN INTERNATIONAL,

     Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff JANE DOE by and through her undersigned counsel hereby sues the Defendant and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.     This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

2.     **THE PLAINTIFF**. The Plaintiff JANE DOE is sui juris and is a resident of Ivins, Utah.

3.     **THE DEFENDANT.** The Defendant, ROYAL CARIBBEAN CRUISES LTD., A LIBERIAN CORPORATION (Hereinafter referred to as "RCCL") is a foreign corporation incorporated in Liberia and a citizen of Liberia, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami-Dade County, Florida. At all times

1

material hereto, the Defendant owned and operated the cruise ship on which the subject negligence and strict liability occurred.

4.     **FEDERAL SUBJECT MATTER JURISDICTION.** Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state, and arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is being filed in Federal Court as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5.     **VENUE AND PERSONAL JURISDICTION.** The Defendant at all times material hereto, personally or through an agent or representative, in the County and in the District in which this Complaint is filed:

   a.     Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

   b.     had an office or agency in this state and/or county; and/or

   c.     Engaged in substantial activity within this state; and/or

   d.     Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

### OTHER ALLEGATIONS COMMON TO ALL COUNTS

7.     **DATE OF THE INCIDENT.** This incident occurred between April 25 and April 26, 2022.

8.	**LOCATION OF THE INCIDENT.** This incident onboard *RCCL Navigator of the Seas* while the ship was in navigational waters.

9.	**STATUS OF PLAINTIFF AS OF DATE AND TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff were passengers on the subject cruise ship described herein and, accordingly, were invitees while on the vessel. The Plaintiff does not have a copy of the subject ticket, but the Defendant does.

10.	**DESCRIPTION OF THE INCIDENT.** RCCL owns and operates 26 ships which cruise worldwide. RCCL markets to both American and International passengers. The cruise line in its literature and advertisements markets, advertises, and represents directly or indirectly that it provides a safe, secure and fun experience, and through its senior representatives, have represented to the press and the public, that cruising is a safe and secure experience or that cruising is at least as safe and secure as being on land.

11.	The cruise line knows that crimes occur on their ships, including sexual assaults. The 11th Circuit Court of Appeals in *K.T. v. Royal Caribbean Cruises, Ltd*., No. 17-14237, D.C. Docket 1:16-cv-25157-KMM (July 24, 2019) and *Doe v. Princess Cruise Lines, Ltd*., 657 F. 3d 1204 (11th Cir. 2011) held that the cruise lines have been on notice a decade before Christa Fordan's cruise "that sexual assaults on cruise ships were a serious problem." *K.T. v. Royal Caribbean Cruises, Ltd.,* No. 17-14237, D.C. Docket 1:16-cv-25157-KMM (July 24, 2019) at 18; *Doe v. Princess Cruise Lines, Ltd.,* 657 F.3d 1204, 1208 n.4 (11th Cir. 2011). The 11th Circuit Court of Appeals stated:

> Unfortunately, if congressional reports are to be believed, sexual assaults and other violent crimes on cruise ships are a serious problem. The House Subcommittee on Coast Guard and Maritime Transportation Staff has reported:
>
> At a hearing in March 2006 convened by the Committee on Government Reform, cruise industry executives testified that 178 passengers on North American cruises reported being sexually

3

> assaulted between 2003 and 2005. During that same period, 24 people were reported missing and four others reported being robbed.
>
> From fiscal year 2000 through June 2005, the FBI opened 305 case files involving "crimes on the high seas," and during those five years about 45% of those cases were sexual assaults that occurred on cruise ships.
>
> Salvador Hernandez, Deputy Assistant Director of the FBI, testified before Congress in 2007 about sexual and other physical assaults that have taken place on cruise ships: "Sexual assault and physical assaults on cruise ships were the leading crime reported to and investigated by the FBI on the high seas over the last five years, 55 percent and 22 percent respectively . . . ."

*Id.* At 1208 n.4. Yet, the cruise line failed and continues to fail to provide for the safety and security of its passengers during its cruises. This failure of safety and security results in sexual assaults and personal injuries to its passengers, including Jane Doe.

12.     The cruise line failed and continues to fail to monitor and control its crew members onboard the ship in a reasonable manner. In sum, RCCL failed to provide a reasonably safe environment for its passengers on the *RCCL Navigator of the Seas* and to protect passengers, such as Jane Doe, from sexual assault, battery and rape by its crew members.

13.     Further, to save its public image and profits rather than the safety and security of its passengers, the cruise line under-reports incidents to U.S. authorities, the press, and the public. These representations are false. They cause the American public, including the Plaintiff herein to choose this cruise line and when onboard to let down their guard as to the dangerous tendencies of crewmembers, and to rely on the security of the security personnel onboard the ship.

14.     The cruise line typically hires young men from developing world countries and pay these young men a minimal wage below the wage which would be required if they hired Americans for the same job. They place these young men on the ship for months at a time and require them to work 7 days a week for 12 to 14 hours a day, all in the name of saving some money. These young

men are way from their families and spouses and significant others for the months in which they are assigned to and living onboard the ships.

15.     Despite these circumstances, the cruise line does little or nothing to screen these young men before they are hired, to train the young men when they are hired, or to monitor the activities of these crewmembers after they are hired. Second, RCCL poorly screened (or chose not to screen), established the criteria for hiring, poorly and unreasonably trained, and poorly and unreasonably monitored this and other cabin stewards, crew who the cruise line knew would have access to passenger cabins.

16.     RCCL hosted an 80's-90's party onboard the ship as part of RCCL's planned and organized events.  Jane Doe, her friend and their children attended this event.  After dancing Doe and her friend put their children to bed and went back out to enjoy their evening.

17.     Doe and her friend ordered some drinks.  One RCCL waiter in particular kept coming to hang around Doe and her friend.  This RCCL crew member's name was Gassine.  Crew member Gasine spent so much time attempting to hang around Doe that his RCCL supervisor had to intervene and tell him to go back to work.  While hanging around Doe crew member Gasine flirted with Doe and started to touch her around her waist and tell her how pretty Doe was.  Doe thought crew member Gasine was just being overly friendly and seemed harmless.

18.     Doe and her friend did meet crew member Gassine before the night of the incident.  During the initial encounter crew member Gassine was Doe's server and he also spent his time hanging around Doe and her friend.

19.     At one point crew member Gasine asked for Doe's phone number and advised her to download the app WhatsApp so he could communicate with her.  He asked Doe and her friend if he could hang out with her after his shift was over.  Unaware of RCCL's strict no fraternizing rules, Doe and her friend said that would be fine and then went on to enjoy their evening.

20.    At one point crew member Gassine came over to Doe and he brought a drink that she did not order.  Gassine told Doe "Try this.  I made it for you."  Crew member Gassine did not bring a drink for Doe's friend.  The drink appeared to be a red fruity drink.  Trusting that Gassine was a vetted, trained and professional crew member who was being kind, Doe tried the drink.  Within 15 minutes Doe started to feel peculiar and did not feel well.  Doe told her friend that she wanted to go back to the room.  Doe and her friend returned to their cabins at approximately 12:00 a.m. – 12:30 a.m.

21.    During both interactions with crew member Gassine, Doe was not intoxicated or under the influence of drugs.

22.    Doe's next memory was at approximately 3:00 a.m. Doe found herself downstairs in the cafeteria area alone with her phone.  Someone at the cafeteria helped her and looked at Doe as if something peculiar was going on.  Doe noticed that her back was extremely sore as if she had suffered a bad fall.  Doe felt weird and dizzy but did not feel intoxicated, hungover or the effects of alcohol.  Doe went back to her cabin and went to sleep.

23.    The next morning Doe discovered text messages from crew member Gassine but had absolutely no recollection of this correspondence.  Doe noticed that she still felt peculiar.  Doe struggled to wake up and get going that morning.  Doe also noticed that it was extremely difficult for her to get ready for the day let alone move any part of her body.  Doe again did not feel intoxicated, hungover or the effects of alcohol.

24.    Doe, her friend and their children had planned to participate in an excursion and went off to start their day together.  They met with the tour guide.  Doe kept falling asleep when she was both standing and sitting.  Doe was seen falling asleep on the platform used for ziplining.  During lunch Doe fell asleep while eating.  Eventually the tour guide checked to see if Doe had been drinking

that morning and day and was drunk, but she was not. The tour guide was very concerned and decided that Doe needed to go back to the ship immediately to see a doctor to find out what was wrong.

25.     Doe went back to the ship and was taken to her cabin. Her friend went to find security and had them come to the cabin to assist with bringing Doe to the medical center. Doe was taken to the medical center. The shipboard doctor took Doe's medical history, reviewed what happened the night before and that day and physically examined Doe. The shipboard doctor concluded that Doe had been drugged.

26.     Doe was advised that RCCL took crew member Gassine off the floor and put into seclusion. Doe was advised he would remain locked up and was safe.

27.     Doe's friend suggested that Doe be tested for drugs because she suspected that Gassine used a date rape drug on Doe. The doctor agreed and advised both women he too believed that a date rape drug was utilized. However, RCCL's doctor told Doe and her friend that he could not test for date rape drugs on the ship. Nevertheless, the shipboard doctor agreed to draw her blood to test to see if her liver was damaged. At the time Doe presented to the doctor she was unshowered from night before. A rape kit was not conducted despite the shipboard doctor stating that she was a victim of a sexual assault and drugged with a date rape drug. Doe's friend kept advocating for a rape kit so that the materials could be collected and preserved. The doctor advised that they don't have the ability to perform a rape kit but suggested that Doe undergo a rape kit testing when Doe returned home. Doe and her friend noticed that Doe's body started developing dark bruising on her legs as well as bruises on her arms that looked like finger marks. Before leaving Doe and her friend asked for Doe's blood sample so they could get it tested when they went home. RCCL refused to allow Doe to take the blood sample.

28.     After she returned home Doe went for a physical examination and a rape kit was performed. Doe was tested with blue dye which revealed physical trauma to Doe's body. Doe also

had a doctor's appointment scheduled because she had knee surgery scheduled.  Her blood was tested and despite being days later, Doe had fentanyl in her system.

29.     As Doe recovered and returned to therapy, Doe recalled additional details from the incident.  Doe remembered crew member Gassine came to her cabin door and that she with him towards a dark hallway.  In the dark hallway Gassine started to touch her without her permission.  Doe remembered that she tried and failed to pushed him off, recalled a physical struggle, but felt her body growing weak.

30.     RCCL is strictly liable for sexual assault and sexual battery.  RCCL is liable for negligent infliction of emotion distress and intentional infliction of emotional distress.  RCCL is liable for negligent failure to warn.  RCCL is liable for negligent misrepresentation.  RCCL is negligent for negligently hiring, monitoring, screening and retaining its crew members.  RCCL is negligent for failing to provide a reasonably safe ship for its passengers.

31.     The Plaintiff did not consent to the sexual acts described herein. Further, the Plaintiff could not consent to the sexual acts described herein as she was intoxicated at the time of the sexual assault.

32.     **THE BUSINESS MODEL; WORKING CONDITIONS AND THE FAILURE TO SCREEN, TRAIN, AND MONITOR.** The cruise line hires its crew from underdeveloped countries or from countries where the economies are bleak, and the unemployment rates are high. The cruise line chooses to hire from these countries to pay low wages and to get a willing workforce to work on a ship away from home for months at a time and for 7 days a week, often 12 to 14 hours a day.

33.     Upon information and belief, the cruise line utilizes agents or "hiring partners" in these countries and relies on the "hiring partners" to obtain background information on these candidates.  As the cruise line knows, it is all but impossible to obtain complete and reliable background information,

medical and psychological records, and criminal records in such countries. And the "hiring partners" are paid per person actually hired by the cruise line. Accordingly, the cruise line places a disincentive on its "hiring partners" to conduct background checks which can result in the exclusion of people for hire.

34.     The cruise line then fails to examine and test—reasonably under these circumstances—the applicants for a job which involves this level of contact with the public.  The cruise line also fails to train these crew members well and then fails to monitor the crew members.  RCCL's failure to select, train and control its male crew members and/or officers to stay away from female passengers. RCCL fails to provide a safe environment for its female passengers. RCCL fails to protect its female passengers from sexual assault, sexual battery and rape by its crew members and/or officers. RCCL fails to warn female passengers that RCCL's male crew and/or officers represent a danger to female passengers.

35.     The Defendant hires male crew members and/or officers who are from a variety of different cultures.  These crew members and/or officers are away from their wives and girlfriends for months at a time.  The crew members and/or officers are inadequately screened and trained to deal with female passengers on its cruise ships. The Defendant knows that sexual assaults perpetrated by these crew members is a serious, on-going, and repetitive problem.

36.     **NOTICE: PRIOR INCIDENTS.** The Defendant knows that sexual assaults on board its ships are a serious problem.

> Since 2010 cruise lines have been required to keep records of all complaints about certain crimes — including sexual assault and rape — that occur aboard any of their ships during a cruise "that embarks or disembarks passengers in the United States." 46 U.S.C. § 3507(g)(1)(A); see id. § 3507(k)(1). Cruise lines must report those complaints to the FBI and the Department of Transportation. Id. § 3507(g)(3)(A)(i), (ii). The DOT has a statutory duty to compile the reports and publish quarterly "statistical compilation[s]" about certain crimes — including sexual assault and rape — that occur on board cruise vessels. See id. § 3507(g)(4).

> Those compilations are called Cruise Line Incident Reports. Cruise Line Incident Reports, U.S. Dep't Transp., https://www.transportation.gov/mission/safety/cruise-line-incident-reports (last updated Apr. 17, 2019).

*K.T.,* 931 F.3d 1047-49. See *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to the defendant's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident").

37.     The Defendant knew or should have known about the danger of sexual assaults on board because of prior similar incidents. See *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1370 (11th Cir. 2018) (accepting that prior reports of similar incidents are sufficient to provide a cruise ship operator with notice of a dangerous condition); *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to the defendant's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident"). See *Taiarol v. MSC Crociere S.A.*, 677 Fed. Appx. 599 (11th Cir. 2017) (while *Taiariol* was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip, she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps); See *Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d 1275, 1287 (11th Cir. 2015). ("The 'substantial similarity' doctrine does not require identical circumstances....").

a)  K.K., a minor, by and through her Parents, Natural Guardians and Next Friends, T.K. and S.K. v. Royal Caribbean Cruises, Ltd., Case No. 1:23-cv-2057 (S.D. Fla. Mar. 3, 2023): Former passenger K.K. participated in an onboard program designated for teens in a teen room.  K.K. was sexually assaulted by a minor passenger whom RCCL knew or should have known had a propensity to engage in

unwanted sexual advances and misconduct toward female passengers. On November 24, 2021 K.K. was sexually assaulted onboard the Mariner of the Seas.

b) Katrina Pope v. Royal Caribbean Cruises, Ltd., a Liberian Corporation and Royal Media Partners, LLC, a Florida Limited Liability Company, Case No. 1:21-cv-23775 (S.D. Fla. Oct. 26, 2021): Former passenger Katrina Pope was sexually assaulted by crew member Joshua Drillette while onboard the Enchantment of the Seas on or between November 29, 2019 and November 30, 2019.

c) Jane Doe v. Royal Caribbean Cruises Ltd. and Tropical Adventures Antigua, Case No. 1:20-cv-22229: Former passenger Jane Doe was sexually assaulted during an excursion marked sold and represented as safe and reliable by RCCL onboard the Freedom of the Seas. Doe was sexually assaulted on May 29, 2019.

d) Jane Doe, as mother and natural guardian of, Janie Doe, a minor v. Royal Caribbean Cruises Ltd., a Liberian Corporation, Case No. 1:20-cv-22357: Former passenger Doe was sexually assaulted by John Doe onboard the Independence of the Seas on June 23, 2017.

e) Jane Doe v. Royal Caribbean Cruises Ltd. a/k/a Royal Cribbean Cruises Ltd., a Liberian Corporation, d/b/a Royal Caribbean Cruise Line and d/b/a Royal Caribbean International: Case No.: 1:20-cv-25152: Former passenger Jane Doe was sexually assaulted by crew member Lawson while onboard the Liberty of the Seas on January 28, 2020 while in her cabin.

f) Jane Doe and John Doe, individually and as Parents and Natural Guardians of L.S., a Minor Child v. Royal Caribbean Cruises, Ltd., Case No. 1:19-cv-21353: Former

minor passenger L.S. was sexually assaulted onboard the Independence of the Seas by crewmember "Natalia" on December 12, 2018.

g) L.A., a minor by and through his mother, natural guardian and next friend, T.A. v. Royal Caribbean Cruises, Ltd., Case No.: 1:17-cv-23184: Former passenger T.A. was sexually assaulted onboard the Independence of the Seas by two adult passengers who were overserved alcohol by RCCL on August 16, 2015.

h) Bettencourt v. Royal Caribbean Cruises, Ltd. et al, Case No. 1:17-cv-21890: Former passenger Bettencourt who was a minor was served alcohol by an adult passenger until she passed out.  The adult passengers carried Bettencourt to his cabin where he sexually assaulted Bettencourt on March 17, 2017 onboard the Allure of the Seas.

i) Jane Doe, a minor, by and through her parent, natural guardian and best friend, Susan Doe v. Royal Caribbean Cruises, Ltd., Case No. 1:12-cv-24560: Former passenger Doe was sexually assaulted by a male passenger onboard the Allure of the Seas on January 3, 2012.

j) Jane Doe, a minor, by and through her parents, legal guardians and next friends, Susan Doe and John Doe. V. Royal Caribbean Cruises, Ltd., a Liberian Corporation, and Vallarta Adventure, a foreign corporation, Case No: 1:10-cv-20822: Former passenger Jane Doe was sexually assaulted during an excursion sold and advertised by RCCL on board the Mariner of the Seas on March 26, 2009

38. According to data maintained by the Department of Transportation in compliance with the Cruise Vessel Safety and Security Act of 2010 (46 USC § 3507) ("CVSSA"), RCCL reported to the Federal Bureau of Investigations ("FBI") that at least thirty-nine (39) women were

sexually assaulted on RCCL cruise ships during the three (3) year period from January of 2017 until the date of this subject rape. At least sixteen (16) women were sexually assaulted in the one (1) year period immediately prior to this incident. At least ten (10) women were sexually assaulted in the three (3) months during and around which this incident occurred as shown below:

| Committed by | Homicide | | | | Death (suspicious) | | | | Missing U.S. National | | | | Kidnapping | | | | Assault with serious bodily injury | | | | Firing or tampering with vessel | | | | Theft >$10,000 | | | | Sexual assault | | | | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Passenger | Crew | Other | Total | Passenger | Crew | Other | Total | Passenger | Crew | Other | Total | Passenger | Crew | Other | Total | Passenger | Crew | Other | Total | Passenger | Crew | Other | Total | Passenger | Crew | Other | Total | Passenger | Crew | Other | Total | |
| Bahamas Paradise Cruise Line | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Carnival Cruise Lines | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9 | 0 | 0 | 9 | 9 |
| Crystal Cruise Line | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Celebrity Cruise Lines | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Disney Cruise Line | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Holland America Cruise Lines | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| MSC Cruises | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 2 | 2 |
| Norwegian Cruise Lines | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Oceania Cruise Line | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Princess Cruises | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 3 | 3 |
| Royal Caribbean | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 10 | 0 | 0 | 10 | 10 |
| Seabourn | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 2 | 2 |
| Virgin | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 2 | 2 |
| Total | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 19 | 7 | 0 | 26 | 26 |

**CRUISE VESSEL SECURITY AND SAFETY ACT (CVSSA) STATISTICAL COMPILATION**
April 1, 2022 - June 30, 2022
ALLEGED CRIMINAL ACTIVITY OCCURRING ON BOARD CRUISE VESSELS[1]

[1] Pursuant to Title 46 U.S.C section 3507(g)(4)(A):
The Cruise Vessel Security and Safety Act (CVSSA) prescribes security and safety requirements for most cruise ships that embark and disembark in the United States. The Act (as amended in 2014) mandates reporting to the Federal Bureau of Investigation (FBI) of missing persons and certain alleged criminal activity occurring on board applicable cruise vessels. This quarterly report provides a numerical accounting of all incidents of missing persons and alleged crimes reported under the relevant provisions of the CVSSA without regard to the investigative status of the incident.

[1]

39.     **NOTICE: ON-GOING, REPETITIVE PROBLEM.**  The Defendant know or should know that sexual assaults on board its ships are an on-going repetitive problem.

40.     Despite knowing this, the cruise line failed and continues to fail to provide for the safety and security of its passengers during its cruises.  This failure of safety and security results in sexual assaults and personal injuries to its passengers, including the Plaintiff.

41.     **DUTIES OWED BY THE DEFENDANT TO ITS PASSENGERS IN REGARD TO SEXUAL ASSAULT AND BATTERY.**  The general maritime law, state and federal, imposes a strict liability on the common carrier, including the cruise line herein, for sexual assault, sexual battery and rape.  This is a "special non-delegable duty owed by the carrier to the passenger".  *Doe v. Celebrity Cruises, Inc.*, 394 F. 3d 891, 907 (11th Cir. 2004); *New Orleans and N.E.R. Co. v. Jopes,*

[1] https://www.transportation.gov/sites/dot.gov/files/2022-09/2022%20Q2%20CVSSA.pdf

142 U.S. 18, 12 S.Ct. 109, 35 L.Ed. 919 (1891); *New Jersey Steam-Boat Co. v. Brockett*, 121 U.S. 637, 7 S.Ct. 1039, 30 L.Ed. 1049 (1887); thus, the cruise line has an "unconditional responsibility" for its employee's misconduct. *Tullis v. Fidelity and Casualty Company of New York*, 397 F. 2d 22, 23 (5th Cir. 1968) as cited by the Eleventh Circuit Court of Appeals in *Doe v. Celebrity Cruises Inc*., 394 F. 3d at 909. "It is a widely adopted rule that common carriers owe such an absolute duty to their passengers". *See Doe v. Celebrity Cruises Inc*. 394 F. 3d at 911.

42.    **DUTIES OWED BY THE DEFENDANT TO ITS PASSENGERS IN GENERAL.**  The Defendant owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3D03-2132 (Fla. 3d DCA Opinion filed July 21,2004) *citing Kermarec v. Compagnie Generate Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); and *Harnesk vs. NCL Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991).  The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit."  See, *Carlisle vs. Ulysses Line Limited*, *S.A.*, 475 So. 2d 248 (Fla. 3d DCA 1985).

43.    Despite these duties, knowledge, and circumstances of hiring crew described herein, the cruise line failed and continues to fail to monitor and manage its crew members on board the ship in a reasonable manner. The Defendant failed to perform an initial and subsequent review of crew members' mental health, investigate crew members, train, test, counsel including proper testing, training continued testing and/or training. In sum, the Defendant failed to provide a reasonably safe environment for its passengers on the *RCCL Navigator of the Seas* and to protect passengers, including the Plaintiff, from sexual assault by its crew member.

44.    Further, to save its public image and profits rather than the safety and security of its passengers, the cruise line under-reports incidents to U.S. authorities, the press, and the public.

These representations are false. They cause the American public, including the Plaintiff herein, to choose this cruise line and, when onboard, to let down their guard as to the dangerous tendencies of crew members, and to rely on the security of the security personnel onboard the ship.

45.     The Defendant typically hire young men from developing world countries and pays these young men a minimal wage below the wage which would be required if they hired Americans for the same job. They place these young men on the ship for months at a time and require them to work 7 days a week for 12 to 14 hours a day, all in the name of saving some money. These young men are away from their families and spouses and significant others for the months in which they are assigned to and living onboard the ships.

46.     Despite these circumstances, the cruise line does little or nothing to screen these young men before they are hired, to train the young men when they are hired, or to monitor the activities of these crew members after they are hired. Second, the Defendant poorly screened (or chose not to screen), established the criteria for hiring, poorly and unreasonably trained, and poorly and unreasonably monitored this and other crew members who the cruise line knew would have access to female passengers and alcohol.

## COUNT I
## STRICT LIABILITY FOR SEXUAL ASSAULT AND SEXUAL BATTERY

47.     The Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 46.

48.     This is an action for strict liability for the sexual assault, and sexual battery committed on the Plaintiff by RCCL's crew member on board the *RCCL Navigator of the Seas*.

49.     The general maritime law, state and federal, imposes a strict liability on the common carrier, including the cruise line herein, for sexual assault, and sexual battery.  This is a "special non-delegable duty owed by the carrier to the passenger".  *Doe v. Celebrity Cruises, Inc*., 394 F. 3d 891,

907 (11th Cir. 2004); *New Orleans and N.E.R. Co. v. Jopes,* 142 U.S. 18, 12 S.Ct. 109, 35 L.Ed. 919 (1891); *New Jersey Steam-Boat Co. v. Brockett*, 121 U.S. 637, 7 S.Ct. 1039, 30 L.Ed. 1049 (1887); thus, the cruise line has an "unconditional responsibility" for its employees misconduct. *Tullis v. Fidelity and Casualty Company of New York*, 397 F. 2d 22, 23 (5th Cir. 1968) as cited by the Eleventh Circuit Court of Appeals in *Doe v. Celebrity Cruises Inc*., 394 F. 3d at 909. "It is a widely adopted rule that common carriers owe such an absolute duty to their passengers". *See Doe v. Celebrity Cruises Inc*. 394 F. 3d at 911.

50.    On the date of the subject incident, RCCL's employee committed the intentional acts of sexual assault and/or sexual battery on the Plaintiff, a passenger.

51.    RCCL's crew member Gassine was working at the bar that was hosting 80s-90s Party on board *RCCL Navigator of the Seas*, the night of April 25, 2022 and into the morning of April 26, 2022. He prepared a mixed alcoholic beverage that was laced with Fentanyl and served it to a female passenger so he could take advantage of her. The crew member waited for an opportunity to get the Plaintiff alone while she was vulnerable and identified this moment as his opportunity to sexually assault her. This crew member decided he was going to forcefully grab the Plaintiff and do whatever he wanted to her. He started this by forcefully kissing the Plaintiff. The Plaintiff tried to get away but failed. The crew member escalated his efforts and brutishly overpowered the Plaintiff and forced himself on her. The Plaintiff did not consent to these sexual acts. Further, the Plaintiff could not consent to the sexual acts described herein as she was intoxicated and drugged at the time of the sexual assault.

52.    RCCL is strictly liable and responsible for the negligent acts of its shipboard crew members who were employees and/or actual agents of RCCL. This ultimately is based on the fact that the crew members are employees of the cruise line. Therefore, under respondeat superior, the cruise line is liable for the negligence of all crew members working aboard its ships.

53.     When a passenger makes a maritime negligence claim against a shipowner based on an employee's negligence under a theory of vicarious liability, the passenger need not establish that the shipowner had actual or constructive notice of a risk-creating condition. *Yusko v. NCL,* 4 F.4th 1164 (11th Cir. 2021).

54.     RCCL's employee's intentional acts of sexual assault and sexual battery of the Plaintiff have caused the Plaintiff to suffer damages, economic and non-economic, past and future, for bodily injury, emotional distress, mental anguish, pain and suffering, loss of capacity for the enjoyment of life, medical and psychological treatment expenses. The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff demands Judgment against RCCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

<u>**COUNT II**</u>
<u>**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**</u>

55.     The Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 46.

56.     This is an action for RCCL's intentional infliction of emotional distress based upon the RCCL's actions and conduct before and after the sexual assault. "Although maritime law does

not explicitly provide a cause of action for emotional distress, Plaintiffs may nevertheless state an intentional infliction of emotional distress claim in a maritime context." *Markham v. Carnival Corporation*, 2012 WL 12866787 (S.D. Fla. Dec. 3, 2012)(citing *McAllister v. Royal Caribbean Cruises, Ltd.*, 2003 WL 23192102, at *4 (E.D. Pa. Sept. 30, 2003)); *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 841 (9th Cir. 2002).

57.   RCCL through the actions and conduct of its employees or agents, actual or apparent is liable for the intentional infliction of emotional distress. RCCL intentionally inflicted emotional distress upon the Plaintiff by its actions and conduct of before and after the sexual assault.

58.   Sexual assault and/or battery is outrageous conduct that goes beyond all bounds of decency and is to be regarded as odious and utterly intolerable in a civilized community.  Sexual assault and/or battery can cause and did cause emotional distress to the Plaintiff and the emotional distress was severe.

59.   RCCL's conduct is outrageous and goes beyond all bounds of decency and is to be regarded as odious and utterly intolerable in a civilized community.

60.   RCCL's employee Gassine was a bartender working at the bar hosting the 80s-90s Party of the RCCL *Navigator of the Sea* on the night of April 25, 2022, into the early morning hours of April 26, 2022. While working as a bartender for the cruise line, Gassine served Plaintiff a mixed drink laced with Fentanyl. The Fentanyl was odorless and tasteless. Plaintiff could not know she was consuming Fentanyl. Due to her drugged state, Plaintiff was incapable of caring for her own safety or consenting to sexual activity.

61.   Crew member Gassine knew that the Plaintiff was intoxicated. In fact, crew member Gassine had served the Plaintiff drinks himself, including a drink that was laced with Fentanyl. Crew member Gassine knew that he could take advantage of the Plaintiff in her intoxicated state.

62.     Crew member Gassine befriended the Plaintiff during the nights leading up to this night to gain her trust. The Plaintiff trusted RCCL to vet and train the RCCL bar staff. Crew member Gassine took advantage of Plaintiff's trust and served her a drink without her having ordered it. Plaintiff trusted crew member Gassine and did not expect the alcoholic beverage would be laced with Fentanyl.

63.     **EXTREME AND OUTRAGEOUS CONDUCT**. On the date of the subject incident, RCCL's employee committed the intentional acts of sexual assault and/or sexual battery on the Plaintiff, a passenger. Crew member Gassine was working at the bar that was hosting 80s/90s night aboard *RCCL Navigator of the Seas*. He was bartending and served alcohol laced with Fentanyl to a female passenger so he could take advantage of her. The crew member waited for an opportunity to get the Plaintiff alone while she was vulnerable and identified this moment as his opportunity to sexually assault her. This crew member decided he was going to forcefully grab the Plaintiff and do whatever he wanted to her.  He started this by forcefully kissing the Plaintiff.  The Plaintiff tried to get away but failed.  The crew member escalated his efforts and brutishly overpowered the Plaintiff and forced himself on her. Due to the nature of the Plaintiff's drugged status at the time of the incident, she cannot recall the specifics of her sexual assault. However, the Plaintiff did not consent to these sexual acts. Further, the Plaintiff could not consent to the sexual acts described herein as she was intoxicated at the time of the sexual assault.

64.      This attack perpetrated by RCCL's crew member constitutes extreme and outrageous conduct that exceeds all bounds that are usually tolerated by civilized society.

65.     **DELIBERATE OR RECKLESS INFLICTION OF MENTAL SUFFERING**. RCCL, through the actions and conduct of its employee or agent, actual or apparent, is vicariously or strictly liable for the negligent infliction of emotional distress. The conduct of the crew member was directed at the Plaintiff. The employee or agent, actual or apparent, of the RCCL, intentionally

inflicted emotional distress upon the Plaintiff by its actions and conduct of sexual assault and battery. The crew member intended to cause or recklessly disregarded the probability of causing the Plaintiff emotional distress by his attack, sexual assault and/or sexual battery on her.

66.     **SEVERE OR EXTREME EMOTIONAL DISTRESS**.  The crew member's conduct caused the Plaintiff severe emotional distress when he sexually assaulted and/or battered her in a dark hallway aboard the *RCCL Navigator of the Seas*.  The Plaintiff suffered severe emotional distress during the attack where she was forcibly sexually assaulted, during which she reasonably feared for her life and safety and ultimately suffered injuries that could endanger her health and life.  The crew member's extreme and/or outrageous conduct caused the Plaintiff severe or extreme emotional distress that is substantial and/or enduring quality.

67.     **PROXIMATE CAUSE**: The crew member's outrageous conduct of sexual assault and/or battery proximately caused the Plaintiff to experience severe and extreme emotional distress. As a result of this incident, the Plaintiff suffers from psychological trauma including but not limited to fright and anxiety which manifested itself as multiple physical symptoms including but not limited to trouble sleeping, nightmares, trouble concentrating, and being easily startled.

68.     RCCL endangered Plaintiff's health and life. RCCL's outrageous conduct proximately caused the Plaintiff to experience severe and extreme emotional distress.

69.     **DAMAGES**: RCCL's intentional infliction of emotional distress proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. The Plaintiff suffers from psychological trauma which manifests itself as multiple physical symptoms. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages

including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE** the Plaintiff demands Judgment against RCCL for damages  recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT III**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

70.    The Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 46.

71.    This is an action for RCCL's negligent infliction of emotional distress. RCCL's negligence caused the Plaintiff mental distress as a result of the psychological trauma due to the fear of a second violent physical attack, sexual assault and/or sexual battery by RCCL's crew member and RCCL's response thereto.

72.    **DUTIES OWED BY RCCL:** RCCL owes a "duty to exercise reasonable care for the safety of its passengers," including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004).  The Defendant also owes a "duty to exercise

reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991).

73.     RCCL knew, or in the exercise of reasonable care should have known, that on board the cruise ships, there have been numerous instances of sexual assault, sexual battery, rape, and attacks perpetrated by crew and/or officers on passengers. Given the circumstances of the hiring process, the job itself, and the conduct of the crew onboard the ships—more fully described herein—sexual assault, sexual battery, rapes and attacks perpetrated by crew members is an on-going and repetitive problem.

74.     RCCL had a duty to use reasonable care under the circumstances to maintain their ship in a reasonably safe condition commensurate with the activities conducted thereon and to prevent harm to its passengers resulting from the foreseeable sexual assault, battery and rape by crew and/or officers.

75.     In particular, RCCL had a duty to take such precautions as were reasonably necessary to protect its passengers from sexual assault, sexual battery, rape and physical battery and rape which was reasonably foreseeable.

76.     RCCL had experienced and had actual knowledge of assaults and batteries and sexual crimes, and other violence between passengers and between passengers and crew and anticipated and foresaw that crimes would be perpetrated on passengers aboard cruise ships. RCCL knew or should have known of the high risk to its passengers of crime and injury aboard RCCL vessels.

77.     The Plaintiff has a "close personal relationship to the directly injured person", that is, the Plaintiff was the directly injured person.

78.     The Plaintiff was involved in the events causing the negligent injury.

79.     On the date of the subject incident, the RCCL's employee committed the intentional acts of sexual assault and/or sexual battery on the Plaintiff, a passenger. Crew member Gassine

was working at the bar that was hosting the 80s/90s party on board RCCL *Navigator of the Sea*. He served Plaintiff a mixed drink that was laced with Fentanyl so he could take advantage of her. The crew member waited for an opportunity to get the Plaintiff alone while she was vulnerable and identified this moment as his opportunity to sexually assault her. This crew member decided he was going to forcefully grab the Plaintiff and do whatever he wanted to her.  He started this by forcefully kissing the Plaintiff.  The Plaintiff tried to get away but failed.  The crew member escalated his efforts and brutishly overpowered the Plaintiff and forced himself on her. Due to the nature of the Plaintiff's drugged status at the time of the incident, she cannot recall the specifics of her sexual assault. However, the Plaintiff did not consent to these sexual acts. Further, the Plaintiff could not consent to the sexual acts described herein as she was intoxicated at the time of the sexual assault

80.     After the violent and traumatic sexual assault, RCCL refused to incarcerate its crew member that perpetrated the attack.

81.     RCCL did not tell the Plaintiff the perpetrators whereabouts after the attack, just that he was in a crew area. Because RCCL refused to incarcerate the perpetrator, the Plaintiff lived in constant fear that she would be attacked again.

82.     RCCL endangered the Plaintiff's health and life. RCCL's outrageous conduct caused the Plaintiff to experience severe and extreme emotional distress.

83.     **RCCL BREACHED ITS DUTY**: RCCL breached its duty to warn the Plaintiff and other passengers about the high risk of crime and injury aboard its vessels. RCCL  breached its duty to provide proper security to ensure the safety of its passengers. RCCL breached its duty to properly monitor and supervise its employees. RCCL also failed to comply with applicable industry standards, statutes, and/or regulations.

84.    **<u>PROXIMATE CAUSE</u>**: RCCL's negligence put the Plaintiff in high risk of crime and personal injury, including sexual battery and/or assault, and proximately caused the Plaintiff's injuries. Had RCCL properly warned passengers of the high risk of crime aboard its ships, properly monitored and/or supervised its employees, and provided proper security, the Plaintiff would never have been sexually assaulted and/or battered and suffered injuries, including severe emotional distress.

85.    **<u>DAMAGES</u>**: RCCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE** the Plaintiff demands Judgment against RCCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO WARN

86.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 46.

87.     This is an action for negligence of RCCL's failing to warn passengers, including the Plaintiff, of known dangers in places where passengers are invited or reasonably expected to visit.  RCCL anticipated and foresaw that crimes would be perpetrated on passengers aboard its vessels.  RCCL knew or should have known of the high risk to its passengers of crime and injury aboard the vessels is enhanced by copious quantities of alcohol on its vessels. Also, it is expected that passengers, including the Plaintiff, will interact with the RCCL's crew members throughout its cruises.

88.     **DUTIES OWED BY RCCL**: RCCL owes a "duty to exercise reasonable care for the safety of its passengers," including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

89.     RCCL at all relevant times, as well as other major cruise lines, have been required to keep records of all complaints about certain crimes, which include sexual assault, sexual battery

and/or rape.  Cruise lines, including RCCL, must report complaints of sexual assault and rape to the FBI and the Department of Transportation.  *See* 46 U.S.C. §3507(g)(1)(A); 46 U.S.C. §3507(k)(1); 46 U.S.C. §3507(g)(3)(A)(i),(ii). The Department of Transportation has a statutory duty to compile the reports and publish quarterly "statistical compilation[s]" about crimes, including sexual assault and rape that occur on board cruise vessels.  46 U.S.C. §3507(g)(4).  These compilations are titled Cruise Line Incident Reports and maintained on the United States Department of Transportation website at https://www.transportation.gov/mission/safety/cruise-line-incident-reports.  According to the Department of Transportation, sexual assault is the most common crime reported on cruise ships.  For example, in 2022, cruise lines reported 67 crimes to the Department of Transportation, 57 of which involved sexual assaults.

90.     RCCL documents and, as a matter of law, must report prior incidents involving rape, sexual assault, assault and other crimes, which may include prior shipboard safety meetings; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; prior investigative reports as well as through other documentation.

91.     RCCL knows that the most commonly reported crime on cruise ships is sexual assault. RCCL knew or should have known to warn its passengers, including the plaintiff, about the high risk to its passengers of rape, sexual assault, assault and sexual battery and injury aboard the vessels. RCCL failed to warn the plaintiff of this danger and because of that failure, she was unaware she needed to take any special precautions while aboard the subject ship.

92.     **NOTICE: PRIOR INCIDENTS.** RCCL knew or should have known that sexual assaults on board its ships are a serious problem because of prior similar incidents. *K.T.,* 931 F.3d 1047-49. See *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to the defendant's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident"); See

*Taiarol v. MSC Crociere S.A.*, 677 Fed. Appx. 599 (11th Cir. 2017) (while *Taiariol* was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip, she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps); See *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015). ("The 'substantial similarity' doctrine does not require identical circumstances....")

93.   __NOTICE: ON-GOING, REPETITIVE PROBLEM.__   Additionally, RCCL knew or should have known that sexual assaults on board its ships are an on-going repetitive problem.

94.   __RCCL BREACHED ITS DUTY__: RCCL breached its duty to warn the Plaintiff of the dangerous condition and breached its duties to the Plaintiff by its actions and conduct. RCCL, through its crew members, failed to warn its passengers, including the Plaintiff, about the high risk to passengers of crime and injury aboard the subject vessel. RCCL failed to distribute any written materials and/or memos; provide warnings on its website; make audible announcements; play video warning messages or other types of warnings to its passengers that they are at high risk of crime and injury while on their cruise line. RCCL also failed to comply with applicable industry standards, statutes, and/or regulations.

95.   __PROXIMATE CAUSE__: RCCL's failure to properly warn the Plaintiff of the high risk of crime and personal injury, including sexual assault and/or assault, proximately caused the Plaintiff's injuries.  Had RCCL properly warned the Plaintiff of the dangerous condition, she would never have taken the subject cruise and would never have been sexually assaulted.

96.   __DAMAGES__: RCCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost

wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff demands Judgment against RCCL for damages  recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

<u>**COUNT V**</u>
**NEGLIGENT SECURITY- RCCL**

97.    The Plaintiff adopts and realleges each and every allegation in paragraphs 1 through 46.

98.    This is an action for negligent security on board the *RCCL Navigator of the Seas,* which allowed one of RCCL's cruise line crew members to sexually assault the Plaintiff.

99.    <u>**DUTIES OWED BY THE DEFENDANT TO ITS PASSENGERS IN GENERAL.**</u>  The Defendant owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3D03-2132 (Fla. 3d DCA Opinion filed July 21,2004) *citing Kermarec v. Compagnie Generate Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed.

2d 550 (1959); and *Harnesk vs. NCL Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991). The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." See, *Carlisle vs. Ulysses Line Limited, S.A.*, 475 So. 2d 248 (Fla. 3d DCA 1985).

100. RCCL knew, or in the exercise of reasonable care should have known, that on board the cruise ships, there have been numerous sexual assaults, sexual batteries, rapes, and attacks perpetrated by crew and/or officers on passengers.

101. RCCL represents that "public areas are monitored by cameras, and highly trained Ship Security Officers continuously patrol the ship and are on emergency call 24/7."

102. Passengers, such as the Plaintiff, rely upon RCCL to monitor these cameras and provide adequate ship security to protect them from harm.

103. **NOTICE: PRIOR INCIDENTS.** RCCL knew or should have known that sexual assaults on board its ships are a serious problem because of prior similar incidents. *K.T.,* 931 F.3d 1047-49. See *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to the defendant's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident"); See *Taiarol v. MSC Crociere S.A.*, 677 Fed. Appx. 599 (11th Cir. 2017) (while *Taiariol* was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip, she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps); See *Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d 1275, 1287 (11th Cir. 2015). ("The 'substantial similarity' doctrine does not require identical circumstances....")

104. **NOTICE: ON-GOING, REPETITIVE PROBLEM.** Additionally, RCCL knew or should have known that sexual assaults on board its ships are an on-going repetitive problem.

105.     **<u>RCCL BREACHED ITS DUTY</u>**: RCCL breached its duty to the Plaintiff. RCCL failed to install a sufficient amount of security cameras on the cruise ship in the passenger areas and other public areas, which are monitored by security personnel, which could serve as a deterrent to incidents of sexual assault or permit RCCL to respond to such incidents. Because there were not a sufficient amount of security cameras and the security cameras that the ship does have are not adequately monitored, there were no security officers watching the cameras to see that crew member Gassine sexually assault plaintiff in a dark hallway aboard *RCCL Navigator of the Seas*. Because the security cameras were not adequately monitored crew member Gassine was able to take the Plaintiff into the empty hallway and sexually assault her.

106.     RCCL also breached its duties by failing to provide a reasonable number of experienced and trained security officers, supervisors, and guards on the cruise ship and/or otherwise provide adequate security to its passengers. Because there was not a sufficient amount of security officers on the ship, the security officers were not adequately patrolling the ship. Had there been an adequate amount of security officers patrolling the ship, a security officer would have patrolled and discovered that crew member Gassine had taken the Plaintiff out of her cabin and into a dark hallway where he forcibly sexually assaulted her.

107.     RCCL also breached its duties by failing to promulgate and enforce reasonable rules and regulations regarding preventing sexual harassment and assault from occurring. RCCL also failed to ascertain the cause of prior similar accidents so as to take measures to prevent the re-occurrence of sexual harassment and assaults. RCCL failed to investigate the hazards and assess risks to passengers, like the Plaintiff and then take the necessary steps to eliminate or minimize the hazards and risks and/or warn passengers, like the Plaintiff, of the dangers from the hazards and risks. RCCL failed to comply with applicable industry standards, statutes, and/or regulations.

108.     Additionally, RCCL breached its duties by failing to implement a method of operation that was reasonable and safe and would prevent dangerous conditions such as the one in this case. Because RCCL failed to implement a method of operation which would prevent dangerous conditions such as the one in this case, no security officer went to find out why crew member Gassine had taken the Plaintiff to an empty hallway and forcibly sexually assaulted her. Because no security officer went to find out why crew member Gassine had taken the Plaintiff to an empty hallway, Gassine was able to sexually assault and/or assault the Plaintiff.

109.     **PROXIMATE CAUSE**: RCCL's failures put the Plaintiff in high risk of crime and personal injury, including rape, sexual assault and/or sexual battery proximately caused the Plaintiff's injuries.  Had RCCL properly implemented a security system, the Plaintiff would never have been sexually assaulted and/or sexually battered.

110.     **DAMAGES**: RCCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; and household and other related expenses in the past and in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff demands Judgment against RCCL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental

anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT VI**
**NEGLIGENT SUPERVISION- RCCL**

111.    The Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 46.

112.    This is an action for negligent supervision of the RCCL's crew member who sexually assaulted the Plaintiff on board *RCCL Navigator of the Seas.*

113.    **DUTIES OWED BY THE DEFENDANT TO ITS PASSENGERS IN GENERAL.** The Defendant owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3D03-2132 (Fla. 3d DCA Opinion filed July 21,2004) *citing Kermarec v. Compagnie Generate Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); and *Harnesk vs. NCL Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991).

114.    The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." See, *Carlisle vs. Ulysses Line Limited*, *S.A.*, 475 So. 2d 248 (Fla. 3d DCA 1985).

115.    RCCL had a duty to use reasonable care under the circumstances to maintain their ship in a reasonably safe condition commensurate with the activities conducted thereon and to prevent harm to its passengers resulting from the foreseeable sexual assault and battery by crew and/or officers.  In particular, RCCL had a duty to take such precautions as were reasonably necessary to

32

protect its passengers from sexual assault and sexual battery and physical battery, which was reasonably foreseeable.

116.    RCCL knew, or in the exercise of reasonable care should have known, that on board the cruise ships, there have been numerous sexual assaults, sexual batteries, and attacks perpetrated by crew and/or officers on passengers.

117.    **NOTICE: PRIOR INCIDENTS.** RCCL knew or should have known that sexual assaults on board its ships are a serious problem because of prior similar incidents. *K.T.,* 931 F.3d 1047-49. See *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to the defendant's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident"); See *Taiarol v. MSC Crociere S.A.*, 677 Fed. Appx. 599 (11th Cir. 2017) (while *Taiariol* was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip, she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps); See *Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d 1275, 1287 (11th Cir. 2015). ("The 'substantial similarity' doctrine does not require identical circumstances....")

118.    **NOTICE: ON-GOING, REPETITIVE PROBLEM.** Additionally, RCCL knew or should have known that sexual assaults on board its ships are an on-going repetitive problem.

119.    **NOTICE: LENGTH OF TIME.** RCCL knew or should have known that crew member Gassine posed a danger to passengers and was not being properly supervised by the length of time he was allowed to spend flirting with the Plaintiff alcohol and the length of time he was able to have her alone in an empty hallway.

120.     Crew member Gassine spent hours bartending the night of the incident and was allowed to serve multiple alcoholic beverages, including a mixed drink laced with Fentanyl, to the Plaintiff.

121.     After spending hours bartending, crew member Gassine was able to follow Plaintiff to her cabin, remove her from the cabin, and assault her in an empty hallway. Crew member Gassine forcibly kept the Plaintiff in this empty hallway for an unreasonably long amount of time. He kept the Plaintiff long enough to force himself on her and sexually assault her.

122.     **RCCL BREACHED ITS DUTY**: RCCL breached its duty to exercise reasonable care under the circumstances by its failures and by its choices of rules, regulations, policies, and procedures that failed to reasonably monitor and supervise its onboard crew. RCCL failed to implement and follow reasonable procedures and methods to supervise, monitor, and/or review crew member conduct and interactions with RCCL's passengers.  RCCL failed to reasonably and properly control its employees and/or provide rules, regulations, policies and/or procedures for  employees regarding conduct and/or fraternization with passengers.  RCCL failed to comply with applicable industry standards, statutes, and/or regulations.

123.     **PROXIMATE CAUSE**: RCCL's failure to properly monitor and supervise its crew members put the Plaintiff in high risk of crime and personal injury, including sexual assault and/or sexual battery proximately caused the Plaintiff's injuries.  Had RCCL properly monitored and supervised its crew members the Plaintiff would never have been sexually assaulted and/or assaulted.

124.     **DAMAGES**: RCCL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future.  Those

injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff demands Judgment against RCCL  for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By:    */s/ Sarah A. Lobel, Esq.*
**John H. Hickey** (FBN 305081)
hickey@hickeylawfirm.com
**Sarah A. Lobel, Esq.** (FBN 88716)
slobel@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorneys for the Plaintiff*